THE WILLIAMS LAW GROUP
Andrew Williams, Esq.
6273 Sunset Drive
Suite D3
South Miami, Florida 33143
Telephone: (253) 970-1683
*Admitted Pro Hac Vice*
Email:  Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com

**Attorney for Plaintiff, The Williams L.G., P.L.L.C.**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| The Williams L.G., P.L.L.C., and Andrew Williams, <br><br> Plaintiffs, <br><br> vs. <br><br> American Arbitration Association, Inc., a not-for-profit organization; Janet S. Weinstein, P.C., an Arizona professional corporation; Janet S. Weinstein, individually and as an officer of Janet S. Weinstein, P.C., and Pravati Credit Fund, III, L.P., a Delaware limited partnership, <br><br> Defendants. | Case No.: 21-CV-00149-GMS <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO VACATE OR MODIFY ARBITRATION AWARD** <br><br> *Declaration of Andrew Williams, Esq. and [Proposed] Order filed concurrently herewith* |

TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs, The Williams L.G., P.L.L.C. ("WLG") and Andrew Williams ("Williams") (collectively, the "Plaintiffs"), by and through undersigned counsel, and pursuant to 9 U.S.C.A. §§ 10, 12 (West) of the Federal Arbitration Act (the "FAA") and Arizona Revised Statute ("A.R.S.") § 12-3023, hereby file and submit this Motion to Vacate or Modify Arbitration Award (the "Motion to Vacate").

The Motion to Vacate will be based upon the Memorandum of Points and Authorities below, the record, and on such evidence and oral argument as may be presented at any hearing on the Motion to Vacate.

Dated this 3rd day of September 2021.

Respectfully submitted,                                                      **THE WILLIAMS LAW GROUP**

                                                                                                 /s Andrew Williams, Esq.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**       **STATEMENT OF FACTS**

On or around October 31, 2018, the Plaintiffs entered into a funding agreement (the "Agreement") with Defendant Pravati Credit Fund III, L.P. ("Pravati"). Pursuant to the terms of the Agreement, WLG was to provide Pravati with fifty (50%) percent of the proceeds it received from a specific, but not exhaustive, portfolio of cases until Pravati recouped on the Agreement.

On or around February 10, 2020, Pravati filed a demand for arbitration (the "Demand"), which commenced arbitration proceedings (the "Arbitration") before Defendant American Arbitration Association, Inc. (the "AAA"). Ultimately, the AAA assigned the Arbitration to Defendants Janet S. Weinstein, P.C. (the "Weinstein Firm"), and Janet S. Weinstein ("Weinstein") (collectively, the "Arbitrator"), who served as the Arbitrator during the Arbitration.

The first hearing in the Arbitration was on June 3, 2020. At this hearing, the Plaintiffs advised the Arbitrator that they contested the Arbitrator's jurisdiction over them in the Arbitration. The Plaintiffs further indicated and stated that they had only appeared under a limited and special appearance. In response to the Plaintiffs' assertions concerning jurisdiction, the Arbitrator ordered the Plaintiffs to file their "objection(s)" to the Arbitrator's jurisdiction, if any, by June 5, 2020, and the Arbitrator ordered Pravati to file its response, if any, by June 8, 2020. On June 11, 2020, the Arbitrator entered "Order No. 2," which held that the Plaintiffs were subject to the jurisdiction of the AAA and the Arbitrator. A true and correct copy of Order No. 2 is attached hereto as Exhibit "**A**".

On June 22, 2020, the Plaintiffs filed a Motion for Reconsideration of the Arbitrator's June 11, 2020 Order No. 2 (the "Motion for Reconsideration") which, among other things, challenged the Arbitrator's ruling regarding the AAA's jurisdiction. A true and correct copy of the Motion for Reconsideration is attached hereto as Exhibit "**B**".

On July 15, 2020, Pravati served its discovery requests on the Plaintiffs, notwithstanding the fact that the Motion for Reconsideration was still pending before the Arbitrator and jurisdiction over the Plaintiffs in the Arbitration had not yet been conferred due to the pending motion. Pravati's discovery requests consisted of Requests for Production ("RFPs") and Interrogatories ("ROGs") (collectively, "Pravati's Discovery Requests"). Had jurisdiction been conferred on the Plaintiffs, the Plaintiffs' responses to Pravati's Discovery Requests would have been due in fifteen (15) days or, on or around, July 30, 2020. The Plaintiffs, who had a pending motion disputing jurisdiction, the Motion for Reconsideration, did not file or serve responses to Pravati's Discovery Requests by July 30, 2020, as the jurisdiction issue was pending before the Arbitrator.

On July 31, 2020, the Arbitrator issued "Order No. 4" in which the Arbitrator denied the Motion for Reconsideration. A true and correct copy of Order No. 4 is attached hereto as Exhibit "**C**". Jurisdiction was therefore officially conferred on the Plaintiffs in the Arbitration on July 31, 2020, after the Arbitrator denied the Motion for Reconsideration.

On August 5, 2020, Pravati sent an email to the Arbitrator requesting "clarification" on how to proceed concerning its discovery requests due to the fact that the Plaintiffs had failed to serve responses to Pravati's Discovery Requests. In response to Pravati's August 5, 2020 email, the Arbitrator directed Pravati to make good faith efforts to communicate with the Plaintiffs and to discuss, by phone, the status of the outstanding discovery. The Arbitrator also advised the parties that if by the close of business on August 10, 2020, the efforts of the parties to meet and confer were not productive, the August 5, 2020 email from Pravati would be treated as a motion to compel and the Plaintiffs would have an opportunity to file a *response* to

the motion to compel, and the Plaintiffs' response was to be due by 3:00 pm EST on August 14, 2020. *See* August 10, 2020 email from the Arbitrator, a true and correct copy of which is attached hereto as Exhibit "**D**".

Prior to the deadline on August 14, 2020, the Plaintiffs filed a Motion to Strike [Pravati's] Improper Communications with the Arbitrator; Memorandum of Points and Authorities; and Exhibits (the "Motion to Strike"). A true and correct copy of the Motion to Strike is attached hereto as Exhibit "**E**". The Motion to Strike sought to strike all, or at least portions, of Pravati's August 5, 2020 email to the Arbitrator, and it was based on Rule 12 of the Arizona Revised Statutes Annotated, which held in pertinent part that the Motion to Strike needed to be filed *before* a formal response to the August 5, 2020 email/motion to compel. The Motion to Strike was thus intended by Plaintiffs to serve as their response.

In response to the Motion to Strike, the Arbitrator ordered the Plaintiffs to serve full and complete responses to Pravati's Discovery Requests on or before August 23, 2020, and the Arbitrator ordered Williams to provide Pravati, by August 20, 2020, at least three dates on which Williams would be available for his deposition telephonically between August 28, 2020 and September 10, 2020. The Arbitrator also denied the Motion to Strike, and leave for the Plaintiffs to file the Motion to Strike despite the fact that the Motion to Strike was a "response" to Pravati's August 5, 2020 email/motion to compel.

The Plaintiffs provided Pravati with dates of availability for Williams' deposition as ordered by the Arbitrator. However, because August 23, 2020, was a Sunday, the Plaintiffs served responses to Pravati's Discovery Requests (the "Discovery Responses"), as ordered by the Arbitrator, on August 24, 2020. The Discovery Responses included the Plaintiffs' objections to Pravati's Discovery Requests as the Arbitrator never advised the Plaintiffs that they were precluded from asserting objections to Pravati's Discovery Requests. On August 28, 2020, Pravati once again emailed the Arbitrator, only this time it was to voice its displeasure at the objections that were made to its discovery requests.

The Arbitrator did not give the Plaintiffs an opportunity to respond to Pravati's August 28, 2020 email. Instead, the Arbitrator *sua sponte* issued "Order No. 6" on August 31, 2020. A true and correct copy of Order No. 6 is attached hereto as Exhibit "**F**". In Order No. 6, the Arbitrator failed to take into account the Motion for Reconsideration and it erroneously held that the Plaintiffs' responses to Pravati's Discovery Requests were due on July 30, 2020, even though the Motion for Reconsideration was not resolved until July 31, 2020. *Id*. The Arbitrator indicated in Order No. 6 that due to the Plaintiffs' "failure" to "timely" respond to Pravati's Discovery Requests, the Plaintiffs had waived their objections. *Id*.

The Arbitrator further ordered Williams and the designated representative of WLG to "appear for deposition on a business day (Monday – Friday) between September 23 and 29, 2020." *Id*. In addition, the Arbitrator held that "[i]f on or before 4:00 pm MST, September 11, 2020," the parties could not "agree on a mutually agreeable date or dates for the depositions to be held, then [Pravati] shall select a date or dates […] between September 23 and 29, 2020. *Id*.

The Plaintiffs provided Pravati with dates and times of availability for Williams' deposition and the deposition of the designated representative of WLG on September 11, 2020. Pravati served notices of deposition based upon the dates that were provided. Pravati set Williams' deposition for September 23, 2020, and it set the deposition for the designated representative of WLG for September 29, 2020.

On September 14, 2020, the Plaintiffs applied to the Arbitrator for leave to file a motion for reconsideration, which would seek to have the Court reconsider its Order No. 6 based upon the fact that jurisdiction was not conferred over the Plaintiffs until July 31, 2020, and as such, the Plaintiffs were under no obligation to respond to Pravati's Discovery Requests by July 30, 2020, and thus Order No. 6 should be reconsidered. *See* the Plaintiffs' September 14, 2020 email to the Arbitrator, a true and correct copy, which is attached hereto as Exhibit "**G**".

On September 15, 2020, the Arbitrator entered "Order No. 7" in which it denied the Plaintiffs' application for leave to file a motion for reconsideration of Order No. 6. A true and correct copy of Order

5

No. 7 is attached hereto as Exhibit "**H**". That same day, September 15, 2020, Pravati requested leave to file a motion for sanctions against the Plaintiffs and the Arbitrator granted Pravati's request on September 20, 2020. The Arbitrator ordered Pravati to file its motion for sanctions on or before October 15, 2020, and the Arbitrator ordered the Plaintiffs to file their response to the motion for sanctions within 14 calendar days after that, or on or before October 29, 2020. *See* September 20, 2020 email from the Arbitrator, a true and correct copy of which is attached hereto as Exhibit "**I**".

On September 23, 2020, Williams appeared for his deposition; however, neither Pravati, nor the Court reporter appeared for at least thirty (30) minutes and Williams disconnected from the deposition link. After approximately another 45 minutes to an hour, Williams received a phone call from counsel for Pravati, Ian Abiae, Esq. ("Abaie"); who advised Williams that he was ready to proceed with the deposition; however, at this point Williams informed Abaie that the deposition would need to be rescheduled due to Abaie's tardiness. *See* Declaration of Andrew Williams, Esq.

Pravati filed its motion for sanctions against [the Plaintiffs] (the "Motion for Sanctions") on October 15, 2020. On October 26, 2020, the Plaintiffs advised the Arbitrator that Williams had a death in his family and as a result the Plaintiffs were seeking an extension of time in which to respond to the Motion for Sanctions. The Arbitrator responded to the Plaintiffs request for an extension of time on November 3, 2020. Pursuant to the Arbitrator's response, the Plaintiffs were provided until 5:00 pm MST on November 4, 2020, to file their response to the Motion for Sanctions. *See* the Arbitrator's November 3, 2020 email, a true and correct copy of which is attached hereto as Exhibit "**J**".

Later that same day, November 3, 2020, the Plaintiffs emailed the Arbitrator to see if the new response deadline could be continued to November 5, 2020, a mere 24 hours later, due to the fact that the Arbitrator's first email extending the time for Plaintiff's to respond was never received and because the 2020 Presidential Election was taking place that day and Williams desired to vote. *See* Plaintiffs' November 3, 2020 email response to the Arbitrator, a true and correct copy of which is attached hereto as Exhibit "**K**".

The Plaintiffs' modest request was denied by the Arbitrator later on November 3, 2020. *See* Exhibit "**L**". On November 4, 2020, the Plaintiffs filed their response in opposition to the Motion for Sanctions.

On Friday, November 6, 2020, only two (2) days before the final hearing in the Arbitration was scheduled to commence the Arbitrator issued "Order No. 8," which granted the Motion for Sanctions. A true and correct copy of Order No. 8 has been attached hereto as Exhibit "**M**". Pursuant to Order No. 8, the Arbitrator, among other things, precluded the Plaintiffs "from subpoenaing or calling any witnesses to testify in [the Plaintiffs' defense];" it prohibited the Plaintiffs from "introduc[ing] any exhibits in evidence;" and it prevented the Plaintiffs from "mak[ing] an opening statement." *Id*.

In response to Order No. 8 (and a subsequent order, "Order No. 9"), Williams emailed the Arbitrator and expressed his concerns over, among other things, Order No. 8, and the Arbitrator's lack of impartiality. A true and correct copy of Williams' November 6, 2020 email has been attached hereto as Composite Exhibit "**N**". In the correspondence that ensued with the Arbitrator, the Arbitrator addressed Williams in a condescending manner, and she even advised Williams to "file an appeal" as if the outcome of the final hearing had already been predetermined. *Id*.

During the early morning hours of November 9, 2020, Williams was admitted into the hospital due to symptoms that had the doctors concerned that he may be having a stroke. *See* Declaration of Andrew Williams. While ultimately, Williams was thankfully found to not be suffering from a stroke, Williams' hospitalization resulted in the final hearing of the Arbitration being continued. *Id*. Due to the continuance, the Arbitrator ordered the parties to provide three (3) dates and times of their availability for a phone call to discuss setting the new final hearing date. The parties were ordered to provide dates to the Arbitrator by November 23, 2020. The Plaintiffs provided three (3) dates of their availability on November 23, 2020 as ordered by the Arbitrator; however, Pravati unjustifiably did not provide any dates.

It was only after the Arbitrator followed up with Pravati and provided it with an additional week to submit its dates that Pravati submitted its three (3) proposed dates on November 30, 2020. By the time

7

Pravati provided its three (3) dates, a week after the Plaintiffs provided their dates, one of the Plaintiffs' dates was no longer available due to the Plaintiffs having a deposition scheduled in another matter. The Arbitrator selected the date that the Plaintiffs were no longer available for the phone call and the very next morning, within 14 hours of being notified of the date by the Arbitrator, the Plaintiffs advised the Arbitrator that they were no longer available on that selected date and the Plaintiffs asked the Arbitrator to select one of the other proposed dates. *See* Exhibit "**O**". The Arbitrator declined to reset the phone call to accommodate the Plaintiffs, which led to the Plaintiffs renewing their request that the Arbitrator recuse or disqualify itself if the Arbitrator were incapable of being impartial. *See* Exhibit "**P**". The Arbitrator declined to recuse itself.

On December 7, 2020, the Arbitrator entered "Order No. 10," which held that six dates in January and February of 2021 had been reserved for the final hearing of the Arbitration. Order No. 10 also indicated that Pravati had arranged for a Court reporter. A true and correct copy of Order No. 10 is attached hereto as Exhibit "**Q**".

Ultimately, the Arbitrator ordered the final hearing of the Arbitration to take place on February 1, 3 and 4, 2021. On January 6, 2021, the Plaintiffs sought leave from the Arbitrator to file motions in limine and a motion for summary judgment in advance of the final hearing. *See* Composite Exhibit "**R**". The Arbitrator denied the request and claimed that the "pre-hearing phase of [the Arbitration] was completed on November 9, 2020. *Id*.

Despite the fact that the Plaintiffs were precluded from presenting witnesses, introducing evidence, or making an opening statement, the Plaintiffs were able to submit a closing brief, which they did (the "Closing Brief"). A true and correct copy of the Closing Brief has been attached hereto as Exhibit "**S**". The Closing Brief clearly detailed the elements of each claim that was asserted by Pravati and how Pravati failed to prove or establish the required elements needed to prevail on its claims. *Id*.

On March 29, 2021, the Arbitrator issued the Interim Award, which indicated that the Arbitrator had ruled in favor of Pravati. A true and correct copy of the Interim Award has been attached hereto as Exhibit "**T**". The Arbitrator issued the Final Award on June 3, 2021. A true and correct copy of the Final Award has been attached hereto as Exhibit "**U**".

## II. **LEGAL STANDARD**

The FAA "allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003)

Section 10 "of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012). Section 10 provides that "the United States court in and for the district wherein the award was made may make an order vacating the [arbitration] award upon the application of any party to the arbitration--

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10 (West).

The Ninth Circuit Court of Appeals (the "Ninth Circuit") has "held that arbitrators 'exceed their powers' in [regards to 9 U.S.C.A. § 10(a)(4) (West)] not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.'" *Kyocera Corp.*, 341 F.3d 987, 997 (9th Cir. 2003).

According to the United States Supreme Court (the "Supreme Court"), "[t]he FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590, 128 S. Ct. 1396, 1406, 170 L. Ed. 2d 254 (2008). Courts in Arizona have held that "arbitration awards are open to attack by judicial review on the ground that the arbitrator exceeded his powers." *Snowberger v. Young*, 24 Ariz. App. 177, 178, 536 P.2d 1069, 1070 (1975).

Pursuant to A.R.S. § 12-3023, "[o]n motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if any of the following applies:

1. The award was procured by corruption, fraud or other undue means.
2. There was either:
    a. Evident partiality by an arbitrator appointed as a neutral arbitrator.
    b. Corruption by an arbitrator.
    c. Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding.
3. An arbitrator refused to postpone the hearing on showing of sufficient cause for postponement, refused to consider evidence material to the controversy or otherwise conducted the hearing contrary to § 12-3015, so as to prejudice substantially the rights of a party to the arbitration proceeding.
4. An arbitrator exceeded the arbitrator's powers.

5. There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under § 12-3015, subsection C not later than the beginning of the arbitration hearing.

6. The arbitration was conducted without proper notice of the initiation of an arbitration as required in § 12-3009 so as to prejudice substantially the rights of a party to the arbitration proceeding

A.R.S. § 12-3023.

## III. ARGUMENT

### A. The Arbitrator Is Guilty of Misconduct/Misbehavior that Prejudiced the Plaintiffs

#### 1. The Arbitrator Failed to Consider the impacts of the Motion for Reconsideration

According to both the FAA and the A.R.S., this Court may vacate the arbitration award if the Arbitrator is guilty of any "misbehavior by which the rights of any party have been prejudiced", and/or the Arbitrator is guilty of misconduct that "prejudic[es] the rights of a party to the arbitration proceeding." *See* 9 U.S.C.A. § 10(a)(3) (West) and A.R.S. § 12-3023(A)(2)(c).

It is well settled under our jurisprudence that "[a] timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court *not* final.' *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717, 203 L. Ed. 2d 43 (2019). According to Black's Law Dictionary, "final" means "not requiring any further judicial action by the court […]; concluded." *See* FINAL, Black's Law Dictionary (11th ed. 2019). And "final judgment" also termed "final decision" is "[a] court's last action that settles the rights of the parties and disposes of all issues in controversy, except for the award of costs (and, sometimes, attorney's fees) and enforcement of the judgment." *See* JUDGMENT, Black's Law Dictionary (11th ed. 2019).

In the present situation, within ten (10) days or in a <u>*reasonable*</u> time after the entry of the Arbitrator's issuance of Order No. 2, the Plaintiffs filed the Motion for Reconsideration, which among other things,

11

challenged the Arbitrator's determination that the AAA and the Arbitrator had jurisdiction over the Plaintiffs in the Arbitration. By filing the Motion for Reconsideration, the "otherwise final decision of [the Arbitrator concerning the Plaintiffs' jurisdiction was] *not* final" and thus jurisdiction was not conferred on the Plaintiffs in the Arbitration until the Motion for Reconsideration was disposed.

The Motion for Reconsideration was disposed by the Arbitrator on July 31, 2020. It was therefore on July 31, 2020, that jurisdiction was conferred on the Plaintiffs. Prior to July 31, 2020, the Plaintiffs clearly appeared in the action under a special and limited appearance and thus the Plaintiffs were not under any obligation to respond to Pravati's Discovery Requests until jurisdiction was actually conferred on them.

Here, the Arbitrator failed to take into account the impacts of the Motion for Reconsideration, and how due to its filing, jurisdiction over the Plaintiffs was not established until *after* the purported deadline the Plaintiffs had to respond to Pravati's Discovery Requests. It was therefore prejudicial misconduct under the FAA and A.R.S. to permit Pravati's August 5, 2020 email to be treated as a motion to compel and to use it to compel the Plaintiffs' responses to Pravati's Discovery Requests, which the Plaintiffs were not obligated to answer until at least 15 days *after* July 31, 2020.

This misconduct, and error, was extremely prejudicial and laid the foundation for the Arbitrator to issue additional sanctions later on the Plaintiffs. These additional sanctions, which also demonstrate how the Arbitrator exceeded her powers, deprived the Plaintiffs of the ability to call any witnesses at the final hearing, precluded the Plaintiffs from introducing any evidence at the final hearing, and prevented the Plaintiffs from making an opening statement at the final hearing, and they were based, at least in part, on the fact that the Plaintiffs had allegedly failed to comply with the Arbitrator's erroneous orders. Had the Arbitrator accounted for the Motion for Reconsideration she would have realized that her jurisdictional determination was not final until it was disposed. If the Arbitrator did not erroneously determine that the Plaintiffs had failed to timely serve discovery responses on Pravati, the Arbitrator would not have issued the

12

sanctions she later did in Order No. 8. This was also an example of the Arbitrator's manifest disregard of the law and shows that her orders/award were completely irrational.

### 2. **Arbitrator Failed to Extend Time for Plaintiffs to Respond to Motion for Sanctions**

Another example of the Arbitrator's misconduct and/or misbehavior is the fact that the Arbitrator failed to extend the time that the Plaintiffs had to respond to the Motion for Sanctions, by even one day, so as to permit Williams to vote in the 2020 Presidential Election. There was no harm, nor any prejudice to Pravati if the deadline was extended; however, Williams was to subject to harm if the extension was denied. Unfortunately, the Arbitrator denied the Plaitniff's request to extend the deadline based upon arbitrary, capricious and untenable grounds.

### B. **The Arbitrator Exceeded the Arbitrator's Powers**

If an arbitrator exceeds his/her powers, it is grounds for vacating the arbitration award under both the FAA and A.R.S. *See* 9 U.S.C.A. § 10(a)(3) (West) and A.R.S. § 12-3023(A)(2)(c). The Ninth Circuit has "held that arbitrators 'exceed their powers' in [regards to 9 U.S.C.A. § 10(a)(4) (West)] not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law." *Kyocera Corp.*, 341 F.3d 987, 997 (9th Cir. 2003). Arbitrators can also exceed their powers by acting in manners or making orders that are outside the scope of their authority.

Here, the Arbitrator exceeded her powers on multiple occasions. Examples of how the Arbitrator exceeded her powers specifically include, but are not limited to, when the Arbitrator entered an order compelling discovery when discovery responses were not untimely because jurisdiction had not yet been conferred, when the Arbitrator compelled the deposition of the designated representative of WLG, when the Arbitrator entered sanctions against the Plaintiffs that deprived the Plaintiffs of the right and opportunity to call witnesses, introduce evidence, or to make an opening statement and when the Arbitrator provided relief to Pravati that was excluded by the Agreement.

### 1. **The Arbitrator Exceeded Its Powers by Compelling Discovery Responses**

As discussed above, and throughout, this memorandum, the Arbitrator engaged in misconduct/misbehavior when it determined that the Plaintiffs' responses to Pravati's Discovery Requests were due on July 30, 2020 in light of the fact that jurisdiction was not conferred on the Plaintiffs until July 31, 2020. *See* Exhibit "**F**". By making this erroneous determination, the Arbitrator exceeded its powers by indicating that the Plaintiffs' objections to Pravati's Discovery Requests were untimely, and in turn ordering the Plaintiffs to produce discovery responses to Pravati's Discovery Requests on this basis.

**2. <u>The Arbitrator Exceeded Its Powers by Compelling the Deposition of WLG's Witness</u>**

Section 7 of the FAA provides arbitrators with the authority to subpoena and summons witnesses; however, Section 7, must be construed in conjunction with Rule 45 of the Federal Rules of Civil Procedure. *See* 9 U.S.C.A. § 7 (West). Rule 45 of the Federal Rules of Civil Procedure places certain geographic limitations on the powers of the District Courts (and arbitrators) to compel the attendance of witnesses. *See* Fed. R. Civ. P. 45. A subpoena under these circumstances may "command a person to attend a trial" or "hearing" but "only" if: (a) "the person [being summoned] resides, is employed, or regularly transacts business in person[]" "within 100 miles" of the hearing...; or (b) the … trial or hearing is "within the state where the person resides, is employed, or regularly transacts business in person," and then only if the person "is a party or a party's officer[,]" or "is commanded to attend a trial and would not incur substantial expense." *See* Fed. R. Civ. P. 45; *see also* 9 U.S.C.A. § 7 (West).

Here, it is undisputed that WLG was a citizen of the State of Florida, and neither it, nor its officer/designated representative resided, were employed, or conducted business in person in the State of Arizona, let alone "within 100 miles" of the hearing. *See* Declaration of Andrew Williams. As such, the Arbitrator exceeded its powers by compelling the deposition of WLG's designated representative and then by sanctioning WLG for not providing its corporate/designated representative for his deposition. If this Court lacks such subpoena or compelling authority than surely the Arbitrator exceeded her powers by acting beyond the scope of authority that is even allotted to judges in the United States District Courts. The

14

Plaintiffs should have never been sanctioned for this, and more on the specific sanctions shall be discussed below.

### 3. The Arbitrator Exceeded Its Powers Through its Sanctions Order (Order No. 8)

While this was referenced as evidence of the Arbitrator engaging in misconduct and misbehavior, the Arbitrator also exceeded its powers when it issued sanctions on the Plaintiffs on the Friday, before the final hearing of the arbitration or a mere two (2) days in advance of the final hearing. In addition to the timing, the actual sanctions themselves preluded the Plaintiffs from calling or subpoenaing *any* witnesses, from introducing *any* evidence or exhibits, and from making an opening statement at the final hearing. Effectively, the Arbitrator's sanctions deprived the Plaintiffs of *any* ability to defend against the claims that were made by Pravati against them.

It was of course of little surprise that the Final Award was entered in Pravati's favor as the Plaintiffs could not refute any of Pravati's allegations at the final hearing with evidence or witnesses. It should be noted that the Plaintiffs specifically requested subpoenas to compel the testimony and attendance of various employees from Pravati including its C.E.O., Alexander Chucri; however, due to the Arbitrator's sanctions this was not allowed.

In addition to being unable to plead a defense at the final hearing, the timing of the Arbitrator's sanctions order significantly prejudiced the Plaintiffs as the Plaintiffs were forced to adjust and modify their entire approach to the final hearing with less than 72 hours' notice. The only reason the hearing ultimately did not take place within the 72-hour period is because Williams was hospitalized on the morning of the final hearing.

It was wholly inappropriate and improper to deprive the Plaintiffs of the right to call or subpoena witnesses, to introduce evidence or to make an opening statement. In issuing such sanctions, the Arbitrator prevented the Plaintiffs from being able to plead a defense by issuing completely irrational sanctions which exhibit a manifest disregard of the law and due process.

15

### 4. **The Final Award Provides Relief Excluded by the Agreement**

In the Final Award, the Arbitrator granted Pravati compensatory damages, punitive damages and costs. *See* Exhibit "**U**". The Arbitrator; however, failed to explain how it applied the actual language of the Agreement to the Final Award. Pursuant to the plain language of the Agreement, "[Williams'] liability hereunder [the Agreement] shall be and is ***specifically limited*** to payments of Recourse Obligations expressly required to be made in accordance with the Agreement (even if such payments are deemed to be damages) and, except to the extent specifically provided in the Agreement, in ***no event*** shall [Williams] be subject hereunder to consequential, exemplary, equitable, loss of profits, ***punitive***, tort or ***any other damages*** or, subject to this Guarantee, ***costs***. *See* Exhibit "**V**", pg. 21. (emphasis added).

Notwithstanding this clear language in the Agreement, the Arbitrator inexplicably awarded Pravati with relief that is/was unavailable pursuant to the terms of the Agreement and that was never contemplated by the parties. As explained by the Supreme Court, when applying the FAA, "[w]hether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators ***must*** 'give effect to the [parties'] contractual rights and expectations. The parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758, 1763, 176 L. Ed. 2d 605 (2010).

In *Stolt-Nielsen S.A.*, the Supreme Court held that "when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Id*. at 671. The Supreme Court further held that in such a situation, "an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [his] powers,' for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." *Id*. at 672.

In this instance, the Agreement was drafted by Pravati and presented to the Plaintiffs. *See* Declaration of Andrew Williams. Both the Plaintiffs and Pravati executed the Agreement, and the terms of the Agreement should have governed the Final Award, not the Arbitrator's own personal thoughts, beliefs, and

16

desires. Because the Arbitrator failed to adhere to the plain language of the Agreement, and effectively rewrote the Agreement to be more favorable to Pravati, the Final Award should be vacated.

### C. The Arbitrator Was Partial to Pravati

Under both the FAA and the A.R.S., this Court may vacate the arbitration award if there is evident partiality from the Arbitrator. *See* 9 U.S.C.A. § 10(a)(3) (West) and A.R.S. § 12-3023(A)(2)(c). In the present situation, the Arbitrator's correspondence and orders clearly indicate her partiality toward Pravati and its counsel.

Despite the fact that the Plaintiffs included a declaration under penalty of perjury with all, or at least nearly all of their motions or formal responses to the Arbitrator, the Arbitrator indicated that she found the declarations of Williams to be incredulous and unconvincing, notwithstanding the fact that Pravati ***never*** filed any competing declaration or affidavit under oath. *See* Composite Exhibit "**N**". Williams even inquired of the Arbitrator as to how could the Plaintiffs expect a fair hearing when the Arbitrator already determined that Williams' statements under oath lacked credibility ***in advance*** of the final hearing. *Id*.

Based upon these assertions by the Arbitrator and the Plaintiffs' treatment by the Arbitrator throughout the Arbitration, the Plaintiffs respectfully requested that the Arbitrator recuse and/or disqualify itself from the proceedings on at least three (3) different occasions if it could not act impartially. Notwithstanding these requests from the Plaintiffs, the Arbitrator declined to recuse or to disqualify itself from the Arbitration.

Williams, who is an officer of the Court in good-standing, has earned the right to have his statements rendered under penalty of perjury taken credibly especially when there is no other affidavit or declaration under penalty of perjury to refute them. Because the Arbitrator was blinded by her apparent personal disdain for Williams, she could not see past her personal feelings and she failed to afford the Plaintiffs and their pleadings the appropriate deference they deserved. Due to the clear partiality demonstrated by the Arbitrator, the Final Award should be vacated.

### D. The Award was Procured by Fraud

After the entry of the Final Award, the Plaintiffs discovered that Pravati was and had been operating and conducting business transactions in Arizona as an unregistered business entity, but failed to disclose this material fact to the Plaintiffs. *See* Exhibit "**W**".

Pursuant to the Arizona Limited Liability Company Act (the "Act"), "[a] foreign limited liability company or a foreign series may not do business in [Arizona] until the foreign limited liability company or foreign series registers with the commission under this article." A.R.S. § 29-3902(A). The Act also provides that "[a] foreign limited liability company or a foreign series doing business in this state may not ***maintain an action or proceeding*** in this state unless the foreign limited liability company or foreign series is registered to do business in this state. *Id.* at (B).

While it is true that the failure to register a foreign limited liability company "does not impair the validity of a contract or act of the foreign company," it can be used to establish fraud, especially if the foreign limited liability company has made representations that it has the full rights and authority to conduct business in the State of Arizona as Pravati did with the Plaintiffs concerning the Agreement. The Plaintiffs reasonably relied on Pravati's representations and had no reason to question the representations that were made by Pravati.

Pravati's failure to register to do business in Arizona also means that Pravati should have been precluded from maintaining "an action or proceeding" such as the Arbitration, which took place in the State of Arizona (albeit virtually due to the COVID-19 pandemic). It further serves as evidence that the Arbitrator exceeded her powers by permitting Pravati, a foreign limited liability company that was not registered with the State of Arizona, to not only commence the Arbitration, but to prosecute the Arbitration. Because Pravati did not have the right to "maintain an action or proceeding" in Arizona the final award was procured by fraud and/or other improper means.

### -CONCLUSION-

18

Based upon the foregoing points and authorities, it should be clear to this Court that the Final Award from the Arbitration should be vacated as it was procured as a result of the misconduct and/or misbehavior of the Arbitrator; because the Arbitrator exceeded its powers, and was partial toward Pravati; and due to the fact that Pravati was not even legally authorized to "maintain an action or proceeding" in Arizona., such as the Arbitration and thus Pravati acquired the Final Award fraudulently.

**WHEREFORE**, the Plaintiffs respectfully request that this Honorable Court enter an order vacating the Final Award and should this Court order a re-hearing of the Arbitration that it disqualify the Arbitrator from participating in any subsequent arbitration, and provide any other and further relief that this Court deems to be just and equitable.

DATED this 3rd day of September 2021.

Respectfully submitted,

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.
BY: ANDREW WILLIAMS, ESQ.

## **CERTIFICATE OF SERVICE**

Plaintiffs hereby certify that on this 3rd day of September 2021, a true and complete copy of this **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO VACATE OR MODIFY ARBITRATION AWARD**, was duly served on all parties and counsel of record, who have entered appearances in this action, via the Courts CM/ECF filing system.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.