**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Williams Law Group PLLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Pravati Credit Fund III, LP,<br><br>Defendant. | No. CV-21-00149-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Pravati Credit Fund III, L.P.'s ("Defendant") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) (Doc. 46). Also pending before the Court is Williams Law Group, P.L.L.C. and Andrew Williams's (collectively, "Plaintiffs") Motion to Strike the Supplement Filed by Defendant Pravati Credit Fund III, L.P. on June 11, 2021 [DE 42], and Request for Attorney's Fees (Doc. 43), Notice of Motion and Motion to Vacate or Modify Arbitration Award (Doc. 50), Motion for Extension of Time to File Reply in Support of Motion to Vacate [DE 50] (Doc. 57), and Notice of Motion and Motion for Leave to File Out of Time Reply in Further Support of Plaintiff's Motion to Vacate or Modify Arbitration Award (Doc. 61). For the reasons below, Defendant's Motion is granted, Plaintiff's Motion to Vacate is denied, and Plaintiffs' remaining Motions are denied as moot.[1]

---

[1] The Court has reviewed Plaintiffs' untimely Reply, (Doc. 59), which is the subject of two pending motions (Doc. 57; Doc. 61.) Because Plaintiffs' Reply does not affect the Court's underlying analysis, Plaintiffs' motions are denied as moot. (Doc. 57; Doc. 61.)

# BACKGROUND

The Plaintiff law firm ("Law Firm") entered into an agreement (the "Agreement") with Defendant that provided for a loan in exchange for "a lien against and right to payment from [Law Firm] receivables and payment intangibles." (Doc. 56 at 2.) The individual Plaintiff ("Mr. Williams") also executed a Guarantee Agreement in which he agreed to pay Defendant if the Law Firm defaulted on the Agreement. (Doc. 56-2 at 41.) When Plaintiffs allegedly defaulted, Defendant initiated an arbitration proceeding pursuant to an arbitration clause in the Agreement. (Doc. 54 at 2–3; Doc. 56-2 at 12–13.) During the arbitration, Plaintiffs were sanctioned for failing to comply with the orders of the arbitrator. (Doc. 50-13.) Plaintiffs were later found liable to Defendant, and instituted this action challenging the arbitration and alleging various constitutional violations and claims for usury and abuse of process. (Doc. 1.)

# DISCUSSION

## I. Legal Standard

Defendant argues that the Court should dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because they are subject to a valid arbitration clause. (Doc. 46.) A Rule 12(b)(1) motion to dismiss is a proper means for a litigant to enforce a contractual arbitration clause. *See, e.g.*, *Gravestone Ent. LLC v. Maxim Media Mktg. Inc.*, No. CV-19-03385-PHX-GMS, 2019 WL 3578471, at *1 (D. Ariz. Aug. 6, 2019); *ROI Props. Inc. v. Burford Cap. Ltd.*, No. CV-18-03300-PHX-DJH, 2019 WL 1359254, at *2 (D. Ariz. Jan. 14, 2019); *Bronson v. Daiohs USA Inc.*, No. CV-19-00547-TUC-RCC, 2020 U.S. Dist. LEXIS 53795, at *6–7 (D. Ariz. Mar. 26, 2020); *Filimex, L.L.C. v. Novoa Invs., L.L.C.*, No. CV 05–3792–PHX–SMM, 2006 WL 2091661, at *2–3 (D. Ariz. July 17, 2006). Dismissal is appropriate when all claims are subject to arbitration. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 637–38 (9th Cir. 1988); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) ("[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the

action are subject to arbitration.").

The Federal Arbitration Act ("FAA") governs contracts "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. The FAA provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," *id.*, and permits a party "aggrieved by the alleged . . . refusal of another to arbitrate" to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement. *Id.* § 4. By its terms, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *See* 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *see also Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991). If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms.

**II. Validity of Agreement**

Plaintiffs contend that the arbitration agreement is invalid because there was no meeting of the minds and because it contained illegal terms. (Doc. 54 at 5.) The question of whether an arbitration agreement is "valid, irrevocable, and enforceable" is governed by state law. *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).

**A. Meeting of the Minds**

Although Plaintiffs characterize the issue as one of mutual assent—or the "meeting of the minds"—Plaintiffs are actually claiming that Defendant misrepresented its ability to transact business in Arizona. Lack of mutual assent merely means that there is "no distinct intent common to both parties . . . so that all material terms in the contract are assented to."

*Hartford v. Indus. Comm'n*, 178 Ariz. 106, 112, 870 P.2d 1202, 1208 (Ct. App. 1994). In other words, both parties must intend to be bound by the terms of the contract before it is binding. *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990) ("[B]efore a binding contract is formed, the parties must mutually consent to all material terms.") Plaintiffs do not claim that they never actually intended to be bound by the terms of the contract or arbitration clause; instead, they argue that Defendant misrepresented its ability to transact business in Arizona, which Plaintiffs relied on when agreeing to the contract. Fraud in the inducement makes a contract voidable "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying." Restatement (Second) of Contracts § 164 (Am. L. Inst. 1981); *see also John Munic Enters., Inc. v. Laos*, 235 Ariz. 12, 16, 326 P.3d 279, 283 (Ct. App. 2014).

The Supreme Court has made clear that fraud-in-the-inducement claims that challenge the *agreement itself*—rather than the arbitration clause at issue—must be submitted to arbitration under the FAA. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Rent-A-Center., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). Here, Plaintiffs contend that the entire agreement was procured by fraud: "Because there was no meeting of the minds . . . between the Plaintiffs and Pravati *the Agreement* is thus void." (Doc. 54 at 8 (emphasis added).) Because Plaintiffs do not attack the validity of the arbitration clause by itself, but rather challenge the entire contract, this issue must be submitted to arbitration.

### B. Illegal or Against Public Policy

Like Plaintiffs' claim for fraud in the inducement, the Supreme Court has also made clear that claims of usury that invalidate the *contract itself*—rather than the arbitration provision—must be decided by arbitration under the FAA. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446–49 (2006). Because Plaintiffs do not challenge the validity of the arbitration provision specifically, the arbitrator must decide whether the Agreement is usurious.

### III. Scope of the Agreement

The final issue is whether Plaintiffs' remaining claims are covered by the arbitration clause. Plaintiffs' remaining claims are for abuse of process and usury. (Docs. 1, 45.) The arbitration clause provides:

> To the maximum extent not prohibited by applicable law, any and all claims, counterclaims, demands, causes of action, disputes, or other controversies under this Agreement or the alleged breach of any provision hereof, . . . which shall include any dispute, controversy or claim that may arise between or among them in connection with, arising out of, or otherwise relating to this Agreement or the application, implementation, validity or breach of this Agreement or any provision of this Agreement (including, without limitation, claims based on contract, tort or statute), shall be finally, conclusively and exclusively settled by binding arbitration in the State of Arizona in accordance with the arbitration rules (the "Rules") of the American Arbitration Association (AAA) or any successor thereto then in effect. **EACH PARTY HEREBY EXPRESSLY WAIVES ITS RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, WITH RESPECT TO ANY MATTER SUBJECT TO ARBITRATION PURSUANT TO THIS AGREEMENT. EACH PARTY AGREES THAT THERE SHALL BE NO AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION OR PRIVATE ATTORNEY GENERAL BASIS.**

(Doc. 56-2 at 12–13.)

### A. Abuse of Process

The scope of an arbitration agreement is governed by federal substantive law. *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). In accordance with the broad federal policy favoring arbitration agreements, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Thus, the threshold for arbitrability is not high, *Simula*, 175 F.3d at 719, and the burden is on the party resisting arbitration, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, Count IV alleges that Defendant initiated the underlying arbitration for the improper purpose of harassment and financial gain. (Doc. 1 at 10.) In the underlying arbitration, Defendant sought enforcement of its rights under the agreement. (Doc. 56-2 at 57.) Because the arbitration clause was part of the agreement, Defendant's initiation of the arbitration constituted a dispute regarding the "implementation" of the Agreement. (Doc. 56-2 at 12–13); *Implementation*, Merriam-Webster, https://www.merriam-webster.com/dictionary/implementation (last visited Jan. 6, 2022) (defining the word as "an act or instance of implementing something: *the process of making something active or effective*" (emphasis added).) Because the plain language of the Agreement encompasses the present dispute, and because there is a presumption in favor of arbitration, Plaintiffs' abuse of process claim is subject to arbitration.

### B. Usury

Count V alleges that Defendant entered into the Agreement with the improper purpose of imposing a usurious penalty provision. (Doc. 1 at 12.) Because this claim is a "dispute . . . arising out of, or otherwise relating to this Agreement or the application, implementation, *validity* or breach of this Agreement or any provision of this Agreement," it is within the scope of the arbitration provision. (Doc. 56-2 at 12–13 (emphasis added)); *see Validity*, Merriam-Webster, https://www.merriam-webster.com/dictionary/validity (last visited Jan. 6, 2022) (defining the word as "the state of being acceptable according to the law"). Plaintiffs' claims are subject to arbitration and thus dismissed.

### IV. Plaintiffs' Proposed Amendment

Plaintiffs next request leave to amend the Complaint to add a claim for fraudulent inducement. (Doc. 54 at 11.) Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given when "justice so requires." Fed. R. Civ. P. 15(a). "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

As explained above, Plaintiffs' proposed claim for fraudulent inducement is subject

to arbitration pursuant to the arbitration clause.  Because the amendment would not change the outcome of this motion to dismiss, amendment is futile, and Plaintiffs' Motion is denied without prejudice.

**V. Motion to Vacate**

The FAA enumerates the limited grounds on which a federal court may vacate, modify, or correct an arbitration award: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[2]  9 U.S.C. §§ 9–11.  The Ninth Circuit has held that the FAA requires confirmation of an award "even in the face of erroneous findings of fact or misinterpretations of law." *Kyocera Corp. v. PrudentialBache Trade Svcs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003).  In addition, the Ninth Circuit has "adopted a narrow 'manifest disregard of the law' exception under which a procedurally proper arbitration award may be vacated." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007).

**A. AAA's Jurisdiction**

Plaintiffs first argue that the arbitrator did not have jurisdiction over them when Plaintiffs failed to timely respond to Defendant's discovery requests.  (Doc. 50 at 11–13.) Plaintiffs failed to raise the objection to jurisdiction by the deadline in the scheduling order, and thus the objection was denied.  (Doc. 50-1 at 6–7.)  Plaintiffs then filed a Motion for Reconsideration of the arbitrator's jurisdictional decision, and now argue that this Motion divested the arbitrator of jurisdiction over Plaintiffs until the arbitrator ruled.  (Doc. 50 at 12.)  The case on which Plaintiffs rely for this proposition, however, is not on point.

---

[2] As it pertains to the specific grounds for vacatur that Plaintiffs raise, the Court is unaware of any authority suggesting that the analysis under Ariz. Rev. Stat. § 12-3023 differs from the analysis under 9 U.S.C. § 10.  Therefore, for the reasons discussed below, Plaintiffs' arguments relying on Ariz. Rev. Stat. § 12-3023 fail.

- 7 -

Plaintiffs overlook the last part of their quoted sentence: "A timely motion for reconsideration filed within a window to appeal does not toll anything; it 'renders an otherwise final decision of a district court not final' *for purposes of appeal*." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019) (emphasis added) (quoting *United States v. Ibarra*, 502 U.S. 1, 6 (1991) (per curiam)). This is a question of jurisdiction, not appeal. Because Plaintiffs waived the jurisdictional argument, the arbitrator had jurisdiction over Plaintiffs to require them to comply with Defendant's discovery requests. The Motion for Reconsideration did not deprive the arbitrator of jurisdiction that it had already acquired. The arbitrator therefore did not engage in "misbehavior by which the rights of any party have been prejudiced" nor in misconduct that "prejudic[es] the rights of a party to the arbitration proceeding." 9 U.S.C. § 10(a)(3); Ariz. Rev. Stat. § 12-3023(A)(2)(c). Moreover, the arbitrator did not exceed her power by ordering Plaintiffs to comply.

### B. Failure to Extend Time to Respond to Motion for Sanctions

The arbitrator did not engage in misconduct or misbehavior by failing to grant Plaintiffs an extension of time to file a Response to Defendant's Motion for Sanctions. (Doc. 50 at 13.) On October 26, Plaintiffs requested a four-day extension to November 2. On November 2, the arbitrator granted the extension until November 4. (Doc. 50-13 at 7.) One day later, Plaintiffs requested yet another extension because they allegedly received the email granting the extension one day late. (Doc. 50-13 at 7–8.) The arbitrator denied the request, and Plaintiffs filed an untimely Response on November 4. (Doc. 50-13 at 8.) Despite the untimely Response, the arbitrator "considered the arguments [and] sworn statements presented in [Plaintiffs'] untimely response to the Motion. (Doc. 50-13 at 8.) Even if the arbitrator erred in not granting the extension, Plaintiffs cannot show prejudice because the Response was considered in full. 9 U.S.C. § 10(a)(3); Ariz. Rev. Stat. § 12-3023(A)(2)(c). Plaintiffs' Motion is denied on this ground.

### C. Sanctions Order

Plaintiffs next argue that the arbitrator exceeded her power by imposing the sanctions order. (Doc. 50 at 15.) Generally, an arbitrator's power to issue sanctions comes

from the arbitration agreement or some separate statute. *See Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 943 (N.D. Cal. 2003) ("There are two possible sources for [sanction] power: authority that inheres in the FAA itself and the arbitration contract as construed in light of FAA policy."). Plaintiffs agreed to the arbitration rules of the American Arbitration Association ("AAA") in the Agreement. (Doc. 50-22 at 13.) Rule 58(a) of AAA's Commercial Arbitration Rules states that:

> The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

Am. Arb. Assoc. R. & Mediation Procs. 58(a).[3] Therefore, the arbitrator was empowered to award sanctions, and because the sanction "limit[ed] any party's participation in the arbitration," she was required to explain her decision after receiving evidence and legal argument. The arbitrator received an extensive Motion for Sanctions, supported by nearly fifty exhibits. (Docs. 56-8, 56-9, 56-10.) Although Plaintiffs' Response does not appear to be in the record, it is apparent that the Response was supported by two sworn declarations, (Doc. 50-14 at 3), and the arbitrator fully considered it. (Doc. 50-13 at 8.) Based on the briefing, the arbitrator issued a thorough order explaining her facts and legal conclusions based on the evidence.[4] (Doc. 50-13.) The arbitrator thus followed all the requirements of Rule 58, and the Court finds no reason to disturb her decision. *Cf. Willick v. Napoli Bern Ripka & Assocs., LLP*, No. 15-cv-00652-AB (Ex), 2018 WL 6443080, at *2 (C.D. Cal. Sept. 13, 2018) ("A court's review of an arbitration award is 'highly

---

[3] The AAA rules also grant the arbitrator inherent powers to draw adverse inferences, exclude evidence, or allocate costs "in the case of willful non-compliance with any order issued by the arbitrator." Am. Arb. Assoc. R. & Mediation Procs. 23(b)(iii).

[4] Most notably, the arbitrator highlighted Plaintiffs' repeated untimely and groundless filings and objections; failure to comply with the arbitrator's discovery orders, including missing two noticed depositions; and failure to remit AAA fees, resulting in Defendant having to advance Plaintiffs' share. (Doc. 50-13.)

deferential to the arbitrator.'" (quoting *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011))); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) ("Review of an arbitration award is 'both limited and highly deferential.'" (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004))).

Plaintiffs also argue that the timing of the sanctions order exceeded the arbitrator's powers because it forced Plaintiffs "to adjust and modify their entire approach to the final hearing with less than 72 hours' notice." (Doc. 50 at 15.) However, Plaintiffs were aware of the date of Final Hearing when they requested an extension of the deadline for their Response to the Motion for Sanctions. (Doc. 56-4 at 27, 29.) Instead of filing the Response by November 2, which was originally requested, Plaintiffs filed the untimely Response after close of business on November 4, after receiving an additional extension. (Doc. 50-13 at 7–8.) Plaintiffs would have known of the sanctions Defendant was asking for, yet it was Plaintiffs who asked that the Response deadline be delayed until very close to the final hearing date. Despite Plaintiffs' late Response, the arbitrator still filed the sanctions order on November 6—only two days after the Motion was fully briefed. (Doc. 50-13 at 12.) Because the inconvenient timing of the order was largely a result of Plaintiffs' request for an extension of time,[5] the arbitrator did not exceed her authority by entering the order merely two days after it was fully briefed.

### D. Compelled Deposition of WLG Witness

Plaintiffs also argue that the arbitrator lacked the power to order sanctions in response to Plaintiffs' failure to procure a representative of the Law Firm for a deposition. (Doc. 50 at 14.) Plaintiffs allege that Federal Rule of Civil Procedure 45 precluded the deposition. (Doc. 50 at 14–15.) However, Plaintiff's invocation of Rule 45 misses the mark because the arbitrator was endowed with the power to impose sanctions against the

---

[5] Although the Court recognizes that Mr. Williams experienced a death in his family, which prompted the request for an extension, Plaintiffs still could have asked for a continuance of the Final Hearing or prepared for the Final Hearing with knowledge that the sanctions motion was pending. The Court cannot fault the arbitrator for issuing a "late" order after functionally granting Plaintiffs an extension.

parties for noncompliance with its orders by agreement of the parties. *See Certain Underwriters at Lloyd's*, 264 F. Supp. 2d at 944 ("[A]ny intent of the parties to afford contempt-like powers on the arbitrator must be clearly evident"). As discussed above, the parties empowered the arbitrator to award sanctions by agreeing to arbitrate under the arbitration rules of the AAA. After the parties failed to arrive at a mutually agreeable date to depose Plaintiffs, the arbitrator ordered both Mr. Williams and a Rule 30(b)(6) representative of the Law Firm, which was a party, to appear for a deposition. (Doc. 56-5 at 67.) The failure of the Law Firm's representative to appear therefore was in direct contravention of an order by the arbitrator. Because the parties agreed to endow the arbitrator with the power to "order appropriate sanctions where a party fails to comply . . . with an order of the arbitrator," the arbitrator had the power to sanction the Law Firm accordingly. Am. Arb. Assoc. R. & Mediation Procs. 58(a).

### E. The Final Award

Plaintiffs next argue that the arbitrator erred by awarding compensatory damages, punitive damages, and costs to Defendant. (Doc. 50 at 16.) The Guarantee Agreement provides that "*except to the extent specifically provided in the Agreement*, in no event shall [Mr. Williams] be subject hereunder to consequential, exemplary, equitable, loss of profits, punitive, tort or any other damages or, subject to this Guarantee, costs." (Doc. 50-22 at 33) (emphasis added). Nevertheless, the agreement expressly holds Mr. Williams liable for "payments of Recourse Obligations expressly required to be made in accordance with the Agreement (even if such payments are deemed to be damages)." (Doc. 56-2 at 41.) "Recourse Obligations" is defined as the following:

> [A]ny and all obligations of Law Firm under this Agreement (including all Nonrecourse Advances) as to which Law Firm is fully liable and Pravati has recourse to all assets of Law Firm beyond just the Proceeds and the Collateral, but if, and only if, there occurs any Default under this Agreement (other than a Default under clause '(xiv)' of the definition thereof).

(Doc. 50-22 at 7.) Defendant had recourse to assets outside the collateral "if any Default occurs under this Agreement (other than a Default under clause '(xiv)' of the definition

thereof)."[6] (Doc. 50-22 at 7.) Because the arbitrator found that the Law Firm had defaulted on its obligations, Mr. Williams was liable for "any and all obligations of the Law Firm under this Agreement . . . as to which Law Firm is fully liable." (Doc. 50-22 at 7.) The arbitrator found Plaintiffs liable for breach of contract and conversion pursuant to the terms of the Agreement. (Doc. 56-2 at 65.)

Plaintiff asks this Court to vacate the arbitrator's award because she erred in interpreting the Agreement. That is something this Court may not do, absent exceptional circumstances. "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003). Vacatur for legal error is appropriate only when an arbitrator manifestly disregards the law. *EHM Prods., Inc. v. Starline Tours of Hollywood*, 1 F.4th 1164, 1176 (9th Cir. 2021); *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009). But manifest disregard is a high bar to meet. The party seeking vacatur must show that it is "clear from the record that the arbitrator [] recognized the applicable law and then ignored it." *Bosack*, 586 F.3d at 1104 (quoting *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009)). Plaintiff has failed to point to any evidence in the record that suggests the arbitrator intentionally ignored applicable law. Nor did Plaintiff raise this issue with the arbitrator in the first instance. Therefore, the arbitrator did not manifestly disregard the law in reaching her decision. That the arbitrator may have "construe[d] the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or [made] errors with respect to the evidence" on which she based her rulings, "is a risk that every party to arbitration assumes." *Kyocera Corp.*, 341 F.3d at 1003. "[S]uch legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)." *Id.*

### F. Partiality

Plaintiffs next argue that the arbitrator was partial to Defendant, so the award must

---

[6] Although "clause 'xiv'" was a basis for the arbitrator's finding of default, it was not the only one. (Doc. 56-2 at 59, 62–63 & n.8.)

- 12 -

be vacated. (Doc. 50 at 17.) "To show 'evident partiality' in an arbitrator, [Plaintiffs] either must establish specific facts indicating actual bias toward or against a party or show that [the arbitrator] failed to disclose to the parties information that creates '[a] reasonable impression of bias.'" *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645–46 (9th Cir. 2010) (quoting *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996)). Because Plaintiffs do not argue that the arbitrator failed to disclose information, they must show specific facts indicating actual bias. A "'reasonable impression' of partiality is not equivalent to, nor does it imply, a finding of actual bias." *Schmitz v. Zilveti*, 20 F.3d 1043, 1047 (9th Cir. 1994). "[T]he party alleging evident partiality [in actual bias cases] must establish specific facts [that] indicate improper motives." *Woods*, 78 F.3d at 427 (quoting *Sheet Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)).

Plaintiffs offer the fact that the arbitrator found Plaintiff's sworn declarations not credible as specific evidence of her actual bias. (Doc. 50 at 17.)[7] They also offer the arbitrator's denial of its request for an extension so Mr. Williams could vote. As to the first point, courts generally do not review an arbitrator's findings as to credibility. *See, e.g.*, *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1255 (7th Cir. 1994); *Loughridge v. Allen*, 25 F.3d 1057 (10th Cir. 1994) (unpublished table decision*)*; *Raiola v. Union Bank of Switzerland, LLC*, 230 F. Supp. 2d 355, 359 n.4. (S.D.N.Y. 2002); *Int'l Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*, 418 F. Supp. 3d 481, 489 n.10 (N.D. Cal. 2019). Moreover, the arbitrator's credibility determination was supported by the evidence. The record is replete with examples of Plaintiffs' noncompliance with their discovery obligations and their attempts to obstruct the expedited arbitral procedures. (Doc. 56-9 at 87; Doc. 56-10 at 10, 12, 43, 70, 93, 98.) The arbitrator, having ably presided over the case, was entitled to consider Plaintiffs' sworn declarations as not credible given her personal knowledge of Plaintiffs' conduct and her prior findings that Plaintiffs had not

---

[7] Although Plaintiffs also argue that the arbitrator's bias is evident from her "manifest disregard of the law," (Doc. 59 at 13), as noted above, the Court finds no error with the arbitrator's legal conclusions.

acted in good faith. (Doc. 56-10 at 43.)

That the arbitrator refused to grant Mr. Williams an extension to file his response on November 3, 2020 so that he could vote likewise does not show bias. In her sanctions order, the arbitrator noted that Mr. Williams had represented as early as October 19, 2020, that he had already reviewed the motion for sanctions and that the arbitrator had already extended the deadline for Plaintiffs' response from October 30 to November 4. (Doc. 50-13 at 8.) Plaintiffs have not provided any factual basis on which the Court could conclude that the arbitrator's decision was motivated by anything other than a desire to efficiently manage her docket, given that an evidentiary hearing was scheduled to begin within a week. Therefore, Plaintiffs have failed to meet their burden to show that the arbitrator acted with evident partiality.

### F. Procurement by Fraud

Finally, Plaintiffs contend that the arbitrator's award should be vacated because it was procured by fraud. (Doc. 50 at 18.) Plaintiffs assert that Defendant was not registered to do business in Arizona at the time of the arbitration and was therefore unable to prosecute an arbitration in Arizona. "[I]n order to protect the finality of arbitration decisions, courts must be slow to vacate an arbitral award on the ground of fraud." *Lafarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986). To vacate an arbitral award, a plaintiff must "show that the fraud was (1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Id.*

Plaintiffs have failed to meet their burden to show fraud by clear and convincing evidence. While they have presented the Court with Arizona Corporation Commission records indicating that Pravati Capital, LLC has been registered as a foreign entity in Arizona since 2019, this information does not tend to prove or disprove their allegation that Defendant Pravati Credit Fund III, L.P. has operated as an unregistered foreign entity in the state of Arizona. Further, even if Defendant did operate as an unregistered foreign entity, Plaintiffs have not established that such information—a matter of public record—

was not "discoverable upon the exercise of due diligence prior to the arbitration." *Lafarge Conseils*, 791 F.2d at 1339. Because Plaintiffs have not met their burden to show that the arbitral award was procured by fraud, vacatur is inappropriate.

## CONCLUSION

Plaintiffs' arguments regarding the Agreement's validity, as well as the remaining counts of the Complaint, are subject to arbitration. Accordingly, Defendant's Motion is granted. Moreover, Plaintiffs have failed to show any grounds to vacate the arbitration award under either 9 U.S.C. § 10 or Ariz. Rev. Stat. § 12-3023. Therefore, their Motion to Vacate is denied. Because the remaining motions are now moot, they are also denied.

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) by Defendant Pravati Credit Fund III, LP (Doc. 46) is **GRANTED**. Plaintiffs' Complaint (Doc. 1) is dismissed.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike the Supplement Filed by Defendant Pravati Credit Fund III, L.P. on June 11, 2021 [DE 42], and Request for Attorney's Fees (Doc. 43) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Vacate or Modify Arbitration Award (Doc. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time to File Reply in Support of Motion to Vacate [DE 50] (Doc. 57) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Out of Time Reply in Further Support of Plaintiff's Motion to Vacate or Modify Arbitration Award (Doc. 61) is **DENIED** as moot.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly.

Dated this 4th day of February, 2022.

_____
G. Murray Snow
Chief United States District Judge